My name is Howard Katzhoff. I represent Harry Keels in an appeal from the District Court on a sentencing appeal. The issues presented and briefed involve whether the District Court erred in departing upward based on inadequacy of his criminal history category 6 from a 30 to 37 month guideline range to 57 to 71 month range, and whether the alternative explanation for an upward variance was error in failing to provide a sufficient explanation. The upward departure is  Roberts. Can I just on that last point? I took it, take it from your previous, whether it's plain error. Is that right? The variance question? Your Honor, that's the way I viewed it when I looked at the record, because there wasn't a specific objection. There were objections in general to the variance, both in the written pleading and in the hearing. But as to the specific failure, the sufficient explanation in that manner, it wasn't presented. So I've relied on the four cases that I've cited that this Court has previously found for plain error. And you put it to us as the standard being plain error. I did. Yeah. And the only question with respect to variance is the procedural question of sufficient explanation. I believe there's also substantive reasonableness, which applies to both the departure and to the variance. So again, in your brief, you raise the substantive reasonableness with respect to the departure. But in the section on the variance, you say the first step of that review, and the only issue, one at issue here, requires the Court to consider whether the district court committed any significant procedural error. I believe that may have been inartfully stated that as to the only procedural error that was being raised with regard to the variance, as opposed to I was treating it as if substantive reasonableness applied without necessarily the need to preserve or specifically object in the same way that the procedural variance argument required. Well, I think you're right in that you don't need to have raised it, but that it doesn't need to have been raised below. But you can look again when we get to rebuttal. But your brief has the only section about the sentence being unreasonable states the extent of the departure sentence was unreasonable. And I don't see any part of the brief that discusses the variance being unreasonable. I will look. When I reread in preparation, I saw that I had indicated that, and I thought that that's what I intended. But perhaps, you know, perhaps I wasn't clear about that. I thought that the substantive applied to both arguments. If you wouldn't mind, could we start with the variance issue? Because as you've indicated, you have to win on both because it was an alternative and the variance is always the harder one. So the the argument with regard to the variance is that the explanation is more of a recitation of the negative information in the in the pre-sentence report and not really an adequate explanation or justification for explaining why this case falls outside the normal 3553A factors. Why this criminal history category 6 in this case, which is the highest criminal history, didn't adequately address or account for the 3553 factors. You don't think the repeated commission of drug-related offenses does that work? The district court was pretty careful to explain that, wasn't it? The court did explain that the repeated drug offenses was a factor that the court considered. I would submit that it's much less significant in this particular case because the drug conduct was so dated in relation as compared to, for example, I think the case the government may have relied upon or talked about in terms of similar conduct being permissible was the Molina case, which was a legal reentry, but that was more conduct, more timely. The conduct here, really, that was recited in great detail went back to 15 years ago. Do you have cases that show that in the variance context that matters, that that's significant? Under guidelines, perhaps, but in variance analysis? I'm not sure that I saw any case that specifically said that there's a point in time where it becomes. I don't think there is. I don't think there is. I think that's. But I think that in this case, what happened is the court in addressing the 3553 factors just spent a great deal of time and an inordinate amount of time addressing the prior drug cases, which were 15, 17 years old, and didn't really address the other factors. In other words, my position is that the judge in properly sentencing or varying from a particular guideline here where it's Category 6, where the guidelines have already taken into account recidivism, including the drug recidivism and the difference between. I mean, the judge was clearly struck by the fact that the guidelines took these into account with omissions.  And let's assume that in terms of departures, he was barred from that consideration. He was not barred in making a variance. And he was also very struck by how the 39-month sentence produced no change of conduct. The defendant gets what looks like a very severe sentence, a quite severe sentence, and persists. It's understandable, it seems to me, that he was struck by that. You know, it's a fair comment, but when you look at the sentencing, the totality of the sentencing, it really takes the court misapplied its focus, and it didn't really look at this particular defendant in Category 6 for the particular offense conduct. The court got the conduct wrong in a number of ways. He made Mr. Keeles much more culpable than the facts in the- We're talking only about possession with intent to distribute. I'm sorry, where do you think he overstated it? Well, he made comments that he was selling drugs in a burning place and poisoning the streets and the community and those kinds of comments. That's geographically correct, right? It wasn't geographically correct, that's Mr. Keeles. I mean, poison is a rhetorical phrase here, but it's certainly one commonly used and has certain accuracy. It's somewhat inflammatory, but it didn't really apply to the facts in this case. It really, the facts show that over a two-year investigation, Mr. Keeles showed up on a wiretap for just a series of calls, and it appears at most there's evidence that there appeared to be two transactions where he purchased. There's no evidence of him selling, there's no evidence of him being in the street, there's no evidence of him having any activity in a burning place. Those kind of comments suggest that he punished Mr. Keeles for culpability that was well beyond Mr. Keeles' culpability. And he did that by turning the focus completely on to the criminal history, which, and to the prior drug offenses, which were all much, much earlier, except for the 2006 case, which was not quite as dated. And the unscored conduct was all 1997, was a juvenile matter, which shouldn't be considered. Perhaps could be looked at, but a 99 possession, a 2003 possession, and a 2002 BRA, all very dated conduct that was unscored that he was relying on. And do you accept the government's argument that page 3940 of the brief, they, I think I've got the right side. No, 38, they summarize the cases that you point to, other than the one where there was no explanation, as reversals where the explanations either were not particularized to the defendant or applied equally to everyone convicted of that crime who was in that guidelines range, and those two overlap, obviously. And, of course, both of them are slippery in the sense that particularized raises the question, how particularized? Presumably not a requirement that be unique, but do not the items specially relied on by the court fit within those criteria, or would you object to the government's summary of those cases? I think that the government oversimplifies those cases. I think that there are parts of those cases in this case where the court fails to particularize and specify why the Category 6 offense level 12 for somebody similarly situated was not sufficient, not the. I mean, one difficulty that the court had and we have is that nobody's created a spreadsheet showing, trying to compare swarms of people in the, with those characteristics, those numbers. So we don't know. But the judge certainly identified things that struck him as special, and it's hard to show that they were not special. The judge chose things where, and I think maybe similar to the Duane Brown case, where the factors were really accounted for. The recidivism, the difference from Category 1 to Category 6. And so an individual with this particular offense conduct, 2.6 to 5.8, 2.8 to 5.6 grams, one or two transactions from a two-year-old. I was struck by your argument that at the low end of the ranges, being in Category 6, tripled the minimum. But I think that's my position. The explanations don't seem, don't seem at all crazy. Maybe that's not the right statement. I don't think that I've indicated that I believe to be crazy, but I believe them to be legally incorrect in that they take into, that they're really double punishing for conduct. If a judge was to go through and read every negative piece of information, 22 positive drug tests when somebody was 21 years old in the 2001 case, today, if somebody were to say 16 points is way off the charts. The whole point of a variance is an idea that a court can reasonably regard the guidelines as inadequate, as not taking into account the whole picture. But the court still has to use it as a starting point and generally has to find reasons as to why the guideline is not appropriate. And in this case, it seems to me you're quibbling with the whole picture. The judge is trying to paint the whole picture here. Going back to age 21 seems irrelevant to you. The judge thought it was not irrelevant. There's a, as I understand his reasoning, and correct me if I'm wrong, there's a large picture here. There's a large history here and a criminal defendant who seems impervious to previous punishments. So what's wrong with the judge's citing? As much as he can about this history, he's trying to paint a picture of recidivism, recalcitrance. There's nothing wrong with the court observing it. There's nothing wrong with the court considering the court can consider a great deal. But when the court relies to say this is not, this is not the heartland sort of defendant here. This is an unusual. Well, it didn't say that is the problem that I found going back and looking at it doesn't say that this isn't the heartland of a Category 6 defendant from a minor for a minor drug offense. The guideline that's calculated in Category 6 for this minor offense and the nature of the conduct that's recited is pretty standard and pretty typical for a Category 6 defendant. He treats it as if it's a Category 1 or Category 2 and then and talks about how outrageous it is basically to have this recidivist conduct. The court said he was relying in part on the similarity to the previous offenses. And we've said in Ransom and I think Molinaro that that's an acceptable ground either for a variance or for a departure if it's a repeat of similar offenses. And I think Ransom really had a couple of other factors that seemed to flavor it. And that is that from remembering correctly that Ransom had a number of victim statements and victim impact issues that were stressed. And we upheld on the court's consideration of the fact that he committed fraud after he had previously been convicted of committing fraud. The question is whether these factors are okay. It's not a question of what everything adds up to. With respect to the question of the time lag, at least procedurally, the district court answered your argument. The district court says your attorney points out the 11 year gap. This is not as impressive as it looks at first because you were incarcerated for at least five of those years. The time you were out, you managed to rack up three other convictions. So whether this is something anybody would do on their own, DeNovo, he answers the question, you know, an explanation for why the judge gives an explanation for why the gap doesn't matter to him. So why isn't, what more of an explanation would be required? I'm not necessarily sure that more of an explanation for that. The court made its determination that it didn't place as much significance as counsel did, obviously, on that factor. But the conclusions that are drawn, the re-arrests were not similar conduct, were not drug conduct. And there's been no real claim that dissimilar conduct was necessarily the factor. In terms of just the repetition, I guess the bottom line complaint of craziness, if I can use that term, is that- I think reasonableness is the word we like to use around here. Is at the end of the day that the judge sort of flipped the recidivism factor and never really addressed the totality picture of saying category six defendant for this offense, that these things aren't adequately considered. And this is outside the mind run case for this category six defendant for this case. And therefore, I'm going to double the sentence where no one requested a departure, where probation recommended 33 months, where the government recommended 30 months. Where people very familiar with the case didn't come close to recommending a guideline range, an upward variance, an upward departure, or the ultimate sentence that the court imposed. Okay. And I'm well over. Yeah, I just want to see if any, okay, thank you. We'll hear from the government. Good morning, and may it please the court, Eric Hansford for the United States. I think we, based on the court's questions, we agree that the earliest, the easiest way to resolve this case is as a permissible upward variance here. That the district court did impose the variance in the alternative to the upward departure. And we do think that the district court's explanation for why the original guidelines range of 30 to 37 months did not adequately capture the defendant's full criminal history. There was an adequate explanation for that, and that was particularized to the defendant in ways that those for plain air variance cases were not. Can I pursue a question that I raised implicitly earlier, and that is your identification of the types of things that a sentencing judge needs to point to to explain a variance. And they seem intuitively to make sense. On the other hand, they are also very slippery, in the sense, what is particularized. And actually, the Department of Justice has, I forget whether it's an office or a bureau or what it's called, but does endless statistical analysis of lots of important things relating to criminology. And yet, we never had any data. Which might, I mean, granted it's hard because there are so many different variables of different characteristics. So to turn it into something that points to a clear message would be hard. But we never see any data. Sure, so I think there are maybe two parts to that question. One is on what's particularized. And at least as we see it, what's particularized to the defendant is parts of the defendant's criminal history that aren't fully reflected in the original guidelines range. And so what Molina and Taylor recognize is that a defendant's prior commission of the same crime, repeated commission of the same crime, is not reflected in the criminal history score. Because the criminal history score treats all crimes the same. This court has also cited that as a factor in upward variances. In multiple cases, we cite ransom and nicely in the briefs. There's also Jackson, which we cite for a different court in the briefs. But 848 F3rd at 462 to 463. Now, I think you say they aren't reflected in similar defendants. But what do we know about that? Because we do know that the guidelines themselves exclude various things, which can be seen as having a relation to the risk of recidivism and also other aspects of what's expected to be accomplished by punishment. So we don't know as much as you're suggesting we do know. Well, I think that, I think the rationale of Molina and those cases is that the guidelines don't consider the nature of the prior sentences. It's just the extent of them and that a defendant who, and so that is not reflected in the original guidelines range and is therefore a basis for an upward departure of variance. But as to the data question that the court is asking about, we do not understand, as Chief Judge Garland's questions indicated, the defendant to be raising a substantive reasonableness challenge here. We don't think that there's- No, but whatever the situation on that, we are evaluating explanations. And you, in your brief, developed a formula that on its face sounds reasonable for evaluation. Sure. And I agree that it sounds reasonable. My only problem is that I'm not entirely sure whether we have, whether we know enough to apply it with much confidence. I do think Molina's explanation there, which I think I may just be repeating myself. But I think Molina's explanation there says that the guidelines do not adequately capture that. But just in terms of other kind of benchmarks to weigh the defendant's sentence again. I believe it expresses that as a matter of logic. It seems to me, in fact, it's a matter, it's an empirical matter. What is the relationship between the similarity of the succession of offenses and the prospect of recidivism? Maybe that intuitively it looks as if there's higher probability. We don't actually have any data on that. I guess that, I think that is true. I think- It's circuit laws. Right. I understand we're bound by it. Right. It's still a data gap. I think that is true. I think it's based more on the intuitive logic that a defendant who commits one crime, gets a 39-month sentence, and is not deterred by that sentence, needs a higher sentence to be deterred in the future. Just in terms of those benchmarks, the sentence here does not come anywhere close to the statutory maximum of 20 years. And up until this court's decision in Winstead, the defendant would have been treated as a career offender. He would, in five other circuits, be treated as a career offender. And that would yield a 12 to 16-year sentence, or guidelines range. And so the defendant's sentence here is certainly not out of whack with those sorts of benchmarks. Those other circuits have rejected, or if you just haven't reached it? As I understand, I guess I didn't dig into the underlying circuits. As I understand Winstead, Winstead says five other circuits have reached the opposite conclusion. Meaning that attempted- Well, that sounds like a holding. Right. Five holdings. Right. So attempted distribution in those circuits would qualify for career offender status. We also, just on the whether or not there's been a time lag, or whether this is unduly dated conduct, we would note that the defendant, at the time of this offense, was still on supervised release for the underlying attempted distribution. And so that conviction has not at all faded into the background. And we would also just note that, although the guidelines do take into account the, do give a score for the attempted distributions, Molina is a Category 6 case. And so Molina says you can depart upwards from Category 6 based on similar prior convictions. I'm happy to address the upward departure if there are any questions on that. But we do think the easiest way for this court to resolve the case is based on the upward variance. Isn't that always the easiest way? No, I'm serious. I mean, seriously, the standard for reviewing a variance after Booker is considerably different than the standard for considering technical aspects of a departure. That was the whole point of Booker, to make it not the guidelines advisory. So it would always be easiest, not just in this case. I think that is true. Any questions? Okay. Thank you. You'd ask the court to affirm. The government has kindly left you 1 minute and 48 seconds of his time. Well, Your Honor, I was going to respond to the court's question. It appears I may have taken Judge Kavanaugh's advice from Brown's dissent. And perhaps I relied, it appears I relied in the brief exclusively on the plain error standard, choosing not to rely on the substantive reasonableness. When I was reviewing it, I glossed over that and didn't realize that. No problem. But it appears that's the answer to that question, so the court's correct. Otherwise, I think I've addressed, and the court gave me additional time. So I would ask the court to find that the district court did commit error, plain error. That it did affect prejudice, Mr. Keels, and that it otherwise meets the plain error test that's been set out. Thank you, Mr. Katsoff. You took this case under appointment from the court, and we're grateful for your help. We'll take the matter under advisement.
judges: Garland, Griffith, Williams